United States Bankruptcy Court
Southern District of Texas

**ENTERED**

March 15, 2024

Nathan Ochsner, Clerk

## IN THE UNITED STATED BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 15-35160** |
| ALI A SABERIOON, | § | |
| | § | |
| Debtor. | § | |
| | § | |
| | § | **CHAPTER 7** |

### <u>MEMORANDUM OPINION</u>

Pursuant to Bankruptcy Rule 4003, Ronald Sommers, Chapter 7 trustee, seeks denial of Ali A. Saberioon's claimed exemptions and asserts that Mr. Saberioon is bound by his confirmed Chapter 11 plan which Trustee alleges waived exemptions in the event of a default under the plan.[1] In the alternative, Trustee objects to Debtor's amended Texas-state exemptions because creditors relied on Debtor's plan that utilized federal exemptions, and Trustee asserts that the exemptions exceed the statutory limit.[2] Last, Trustee seeks a determination by this Court that there is a Chapter 7 estate for the Trustee to administer, despite Debtor's Plan indicating that all property of the estate vested in the Debtor upon Chapter 11 Plan confirmation.[3]

On January 10, 2023, the Court conducted an evidentiary hearing on these matters. After considering the pleadings on file, evidence in the record, arguments of counsel, and applicable law, the Court overrules Trustee's objections that the Debtor's Chapter 11 plan waived exemptions in the event of a default; that there was reliance on Debtor's exemptions in his Plan in this case and that Debtor's exemptions exceed the statutory limit. The Court further finds that upon conversion pursuant to 11 U.S.C. § 348 there was a continuation of the bankruptcy estate and that

---

[1] ECF No. 392.
[2] ECF No. 392.
[3] ECF No. 392.

the assets that vested in the Debtor upon confirmation revested into the Chapter 7 estate upon conversion.

## I.    BACKGROUND

1. On October 2, 2015 (the "*Petition Date*") an involuntary petition for relief under Chapter 7 of the Bankruptcy Code[4] was initiated against Ali A. Saberioon ("*Debtor*") by petitioning creditors Green Bank, N.A. ("*Green Bank*"), Texas Capital Bank, N.A. ("*TCB*"), and Mostafa Alavi ("*Alavi*"). The Bank of River Oaks later joined as a petitioning creditor.[5]

2. On May 5, 2016, an Agreed Order on Motion for Entry of and Order for Relief[6] was entered and the Debtor moved to convert the case to Chapter 11.[7]

3. On May 6, 2016, the Court converted the case to Chapter 11.[8]

4. On May 31, 2016, Debtor filed his original schedules, including Schedule C, identifying the Debtor's claimed exemptions using Texas Exemptions.[9]

5.  Debtor identified his homestead and principal place of residence as 8823 Harness Creek Lane, Houston Texas 77024-7044, valued at $30,000,000 (the "*Harness Creek Property*").[10]

6. On July 14, 2016, Debtor filed amended schedules, including an amended Schedule C identifying the Debtor's claimed exemptions using Texas Exemptions.[11]

7. On September 2, 2016, Debtor filed a Plan of Reorganization[12] and a Disclosure Statement.[13]

8. On November 17, 2016, Debtor filed his Amended Plan of Reorganization[14] (the "*Plan*") and his Amended Disclosure Statement[15] (the "*Disclosure Statement*").

---

[4] Any reference to "Code" or "Bankruptcy Code" is a reference to the United States Bankruptcy Code, 11 U.S.C., or any section (i.e.§) thereof refers to the corresponding section in 11 U.S.C.
[5] ECF No. 72.
[6] ECF No. 80.
[7] ECF No. 81.
[8] ECF No. 83.
[9] ECF No. 106, Sch. C, at ｢ｱ 19-20].
[10] ECF No. 423-3.
[11] ECF No. 128, Am. Sch. C, at ｢ｱ 19-20.
[12] ECF No.  141.
[13] ECF No. 142.
[14] ECF No. 159.
[15] ECF No. 160.

9.   On November 21, 2016, the Court entered an Order Conditionally Approving Disclosure Statement[16] (the "*Disclosure Order*") which set the hearing on confirmation of the Plan for December 15, 2016 (the "*Confirmation Hearing*").

10.  On December 13, 2016, the Debtor filed a Motion to Modify Plan.[17]

11.  On December 16, 2016, the Court entered an Order Approving Disclosure Statement and Confirming Chapter 11 Plan (the "*Confirmation Order*").[18]

12.  On January 16, 2017, the Debtor amended his Schedule C again.[19]

13.  On August 15, 2018, the Court entered an Agreed Final Judgment[20] against the Debtor, allowing and deeming the following claims non-dischargeable in the following amounts:
     a.   Claim No. 2-2 in the amount of $383,600;
     b.   Claim No. 3-2 in the amount of $152,600;
     c.   Claim No. 5-2 in the amount of $96,600; and
     d.   Claim No. 1-2 in the amount of $767,200.

14.  Ultimately, the Debtor failed to timely make payments due under the Confirmed Plan to TCB and Veritex.[21]

15.  On February 12, 2019, Randy Williams was appointed examiner ("*Examiner*") pursuant to the Confirmed Plan and an Agreed Order Appointing Examiner.[22]

16.  The Examiner sold the Harness Creek Property (together with certain fixtures) for $5,700,000 through an auction, which sale closed on August 23, 2021.[23]

17.  The proceeds from the sale of the Harness Creek Property (together with certain fixtures) were distributed pursuant to various orders and agreements of parties. More specifically, of the $5,700,000 in sales proceeds, $4,169,742.88 was disbursed to the various parties in the amounts set forth in the Seller's Statement dated August 23, 2021, and the remaining $1,536,532.21 was deposited to the Court's registry on August 26, 2021 and disbursed pursuant to the Agreed Order Disbursing Disputed Funds from Registry of Court entered on November 2, 2021.[24]

---

[16] ECF No. 162.
[17] ECF No. 176.
[18] ECF No. 180.
[19] ECF No. 182, at ¶¶ 1-2; *see also* ECF 423-1.
[20] ECF No. 220.
[21] ECF No. 418 at ¶ 14.
[22] ECF No. 418 at ¶ 15.
[23] ECF No. 418 at ¶ 17.
[24] ECF No. 418 at ¶ 18; *see also* ECF 315-1.

18. The proceeds of the sale of the Harness Creek Property were insufficient to pay all allowed claims, including but not limited to holders of "Class 6 – Allowed Unsecured Claims" under the Confirmed Plan. Neither the Debtor nor the Examiner have made any distributions to holders of Class 6 – Allowed Unsecured Claims under the Confirmed Plan.[25]

19. On May 13, 2022, Debtor filed a Motion for Order Interpreting Confirmed Plan[26] and a Motion to Dismiss Case for Other Cause.[27]

20. On May 13, 2022, creditors Azimpoor Management, Ltd., S & A Family Limited Partnership, Ramesh Sadeghian, and petitioning creditor TCB filed their Motion to Convert Case from Chapter 11 to Chapter 7.[28]

21. On September 27, 2022, the Court entered its Order Granting Motion to Convert Case to Chapter 7 ("*Conversion Order*"), converting this case to a case under Chapter 7 of the Bankruptcy Code.[29]

22. On September 29, 2022, Ron Sommers was duly appointed as the Chapter 7 trustee for the Estate (the "*Trustee*").[30]

23. On October 12, 2022, Debtor filed his conversion schedules (the "*Conversion Schedules"*), including his fourth amendment to his Schedule C identifying his claimed exemptions now utilizing Texas Exemptions.[31]

24. 2095 days passed from the time the Debtor claimed federal exemptions on January 16, 2017, until the time the Debtor claimed Texas state law exemptions when he filed his Conversion Schedules on October 12, 2022.[32]

25. On December 9, 2022, the 341 meeting of creditors was concluded[33] and on the same date, Trustee filed a notice of potential assets.[34]

26. The claims bar date after conversion of the Bankruptcy Case to one under chapter 7 was March 14, 2023 ("*Claims Bar Date*").[35]

---

[25] ECF No. 418 at ¶ 18.
[26] ECF No. 365.
[27] ECF No. 367.
[28] ECF No. 368.
[29] ECF No. 380.
[30] September 29, 2022, Min. Entry.
[31] ECF No. 385, Sch. C, at ¶¶ 13-14.
[32] ECF No. 418 at ¶ 24.
[33] December 9, 2022, Min. Entry.
[34] ECF No. 389.
[35] ECF No. 418 at ¶ 27.

27. After conversion of the Bankruptcy Case to one under chapter 7, two additional claims were filed in the official claims register, including: (i) Claim 18-1 in the amount of $1,300,833.33 (Plains Capital Bank as predecessor to Bank of River Oaks); and (ii) Claim 19-1 in the amount of $249.72. (United States Trustee).[36]

28. Since his appointment after conversion of this Bankruptcy Case to one under chapter 7 of the Bankruptcy Code, the Trustee has not made any disbursements to any creditors identified in the Confirmed Plan and/or in the official claim register in this case.[37]

29. On December 16, 2022, Trustee filed an objection to Debtor's claimed exemptions (the "*Objection*").[38]

30. On January 27, 2023, Debtor filed his response to Trustee's Objection (the "*Response*").[39]

31. On October 17, 2023, and pursuant to General Work Order 2023-11, the instant case was transferred to this Court.[40]

32. On November 14, 2023, this Court held a status conference and scheduled an evidentiary hearing for January 10, 2024.

33. On January 10, 2024, the Court held a hearing and now issues its instant Memorandum Opinion.

## II.     JURISDICTION, VENUE, AND CONSTITUTIONAL AUTHORITY

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334 and exercises its jurisdiction in accordance with Southern District of Texas General Order 2012–6.[41] Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.[42] This court determines that pursuant to 28 U.S.C. § 157(b)(2)(A), and (O) this proceeding contains core matters, as it primarily involves proceedings concerning the administration of this estate.[43] This proceeding is also core under the general

---

[36] ECF No. 418 at 6.
[37] ECF No. 418 at 6.
[38] ECF No. 392.
[39] ECF No. 403.
[40] October 17, 2023, Min. Entry.
[41] *In re*: *Order of Reference to Bankruptcy Judges*, Gen. Order 2012–6 (S.D. Tex. May 24, 2012).
[42] 28 U.S.C. § 157(a); *see also* In re: Order of Reference to Bankruptcy Judges, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).
[43] *See* 11 U.S.C. § 157(b)(2)(A) & (O).

"catch-all" language because such a suit is the type of proceeding that can only arise in the context of a bankruptcy case.[44]

This Court may only hear a case in which venue is proper.[45] 28 U.S.C. § 1408 provides that "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending." Debtor resides in Houston Texas and therefore, venue of this proceeding is proper.[46]

While bankruptcy judges can issue final orders and judgments for core proceedings, absent consent, they can only issue reports and recommendations on non-core matters.[47] Determination of allowance of Debtor's claimed exemptions pending before this Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), and (O). Accordingly, this Court concludes that the narrow limitation imposed by *Stern* does not prohibit this Court from entering a final order here.[48] Alternatively, this Court has constitutional authority to enter a final order because all parties in interest have consented, impliedly if not explicitly, to adjudication of this dispute by this Court.[49] None of these parties has ever objected to this Court's constitutional authority to enter a final order

---

[44] *See Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under § 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.") (quoting *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987)).
[45] 28 U.S.C. § 1408.
[46] ECF No. 385.
[47] *See* 28 U.S.C. §§ 157(b)(1), (c)(1); *see also Stern v. Marshall*, 564 U.S. 462, 480 (2011); *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1938–40 (2015).
[48] *See e.g.*, *Badami v. Sears (In re AFY, Inc.),* 461 B.R. 541, 547-48 (8th Cir. BAP 2012) ("Unless and until the Supreme Court visits other provisions of Section 157(b)(2), we take the Supreme Court at its word and hold that the balance of the authority granted to bankruptcy judges by Congress in 28 U.S.C. § 157(b)(2) is constitutional."); see also *Tanguy v. West (In re Davis)*, No. 00-50129, 538 F. App'x 440, 443 (5th Cir. 2013) ("[W]hile it is true that *Stern* invalidated 28 U.S.C. § 157(b)(2)(C) with respect to 'counterclaims by the estate against persons filing claims against the estate,' *Stern* expressly provides that its limited holding applies only in that 'one isolated respect' .... We decline to extend *Stern's* limited holding herein.") (Citing *Stern*, 564 U.S. at 475, 503, 131 S.Ct. 2594).
[49] *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S.655, 135 S. Ct. 1932, 1947, 191 L.Ed.2d 911 (2015) ("*Sharif* contends that to the extent litigants may validly consent to adjudication by a bankruptcy court, such consent must be expressed. We disagree. Nothing in the Constitution requires that consent to adjudication by a bankruptcy court be express. Nor does the relevant statute, 28 U.S.C. § 157, mandate express consent . . . .").

or judgment. These circumstances unquestionably constitute implied consent. Thus, this Court wields the constitutional authority to enter a final order here.

### III. ANALYSIS

#### A. Debtor's exemptions

On May 31, 2016, Debtor filed his original schedules, including Schedule C, identifying the Debtor's claimed exemptions using Texas Exemptions.[50] Then on July 14, 2016, Debtor filed amended schedules, including an amended Schedule C identifying the Debtor's claimed exemptions using Texas Exemptions.[51] Thereafter, on January 16, 2017, Debtor again amended Schedule C identifying Debtor's claim exemptions utilizing Federal Exemptions.[52] Finally, on October 12, 2022, Debtor filed his conversion schedules (the "*Conversion Schedules*"), including his fourth amendment to his Schedule C identifying his claimed exemptions now utilizing Texas Exemptions.[53] A comparison of each schedule is as follows:

| Comparison of Schedules C | | | |
|---|---|---|---|
| **Property** | **Value** | **Claimed Exemption** | **Applicable Statute** |
| | | | |
| Schedule C - May 31, 2016[54] | | | |
| 8823 Harness Creek Lane Houston, Tx | $30,000,000.00 | 100% of fair market value up to statutory limit | Tex. Const. art. XVI, §§ 50, 51,Tex. Prop. Code §§ up to 41.001-.002 |
| | | | |
| 2007 Mercedes S600 52000 miles | $35,000.00 | 100% of fair market value up to statutory limit | Tex. Prop. Code §§ 42.001(a)(1), (2),42.002(a)(9) |
| | | | |
| 2007 Bently Azure 10000 miles | $100,000.00 | 100% of fair market value up to statutory limit | Tex. Prop. Code §§ 42.001(a)(1), (2), 42.002(a)(9) |
| | | | |

---

[50] ECF No. 106, Sch. C, at ¶¶ 19-20].
[51] ECF No. 128, Am. Sch. C, at ¶¶ 19-20.
[52] ECF No. 182.
[53] ECF No. 385, Sch. C, at ¶¶ 13-14.
[54] ECF No. 106.

| First Amended Schedule C - July 14, 2016[55] | | | |
|---|---|---|---|
| 8823 Harness Creek Lane Houston, Tx | $30,000,000.00 | 100% of fair market value up to statutory limit | Tex. Const. art. XVI, §§ 50, 51,Tex. Prop. Code §§ up to 41.001-.002 |
| | | | |
| 2007 Mercedes S600 52000 miles | $35,000.00 | $35,000.00 | Tex. Prop. Code §§ 42.001(a)(1), (2),42.002(a)(9) |
| | | | |
| 2007 Bently Azure 10000 miles | $100,000.00 | $40,000.00 | Tex. Prop. Code §§ 42.001(a)(1), (2), 42.002(a)(9) |
| | | | |
| Second Amended Schedule C - January 16, 2017[56] | | | |
| | | | |
| 8823 Harness Creek Lane Houston, Tx | $30,000,000.00 | $23,675.00 | 11 U.S.C. § 522(d)(1) |
| | | | |
| 2007 Mercedes S600 52000 miles | $35,000.00 | $3,775.00 | 11 U.S.C. § 522(d)(2) |
| | | | |
| Third Amended Schedule C - October 12, 2022[57] | | | |
| | | | |
| 2007 Bently Azure 10000 miles | | $65,000 | 100% of fair market value up to statutory limit | Tex. Prop. Code §§ 42.001(a)(1), (2),42.002(a)(9) |

## B.    Bankruptcy Rule 4003

In his Objection, Trustee cites to Bankruptcy Rule 4003 which, in part, states:

(a) CLAIM OF EXEMPTIONS. A debtor shall list the property claimed as exempt under §522 of the Code on the schedule of assets required to be filed by Rule 1007. If the debtor fails to claim exemptions or file the schedule within the time specified in Rule 1007, a dependent of the debtor may file the list within 30 days thereafter.

(b) OBJECTING TO A CLAIM OF EXEMPTIONS.

(1) Except as provided in paragraphs (2) and (3), a party in interest may file an objection to the list of property claimed as exempt within 30 days after the meeting of creditors held under §341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later. The court may, for cause, extend the time for filing objections if, before the time to object expires, a party in interest files a request for an extension.

   (2) The trustee may file an objection to a claim of exemption at any time prior to one year after the closing of the case if the debtor fraudulently asserted the claim

---

[55] ECF No. 128.
[56] ECF No. 182.
[57] ECF No. 385.

of exemption. The trustee shall deliver or mail the objection to the debtor and the debtor's attorney, and to any person filing the list of exempt property and that person's attorney.

   . . .

(c) BURDEN OF PROOF. In any hearing under this rule, the objecting party has the burden of proving that the exemptions are not properly claimed. After hearing on notice, the court shall determine the issues presented by the objections.[58]

The Court will now turn to Trustee's Objection.

## C.  Trustee's Objection

Pursuant to Bankruptcy Rule 4003, the Trustee objects to the Debtor's claimed exemptions in his Conversion Schedules and asserts four separate grounds in support, to wit: (1) Trustee asserts that Debtor is bound by his confirmed pre-conversion Chapter 11 Plan, which waived exemptions in the event of a default and that the Plan was carefully negotiated, consensual, and the Debtor received tremendous benefit under the Plan; (2) Trustee asserts that  creditors undoubtedly relied on the Debtor's representations in the Plan that there were no limitations on their ability to pursue the Debtor's other assets should he fail to comply with his plan obligations and to allow the Debtor to claim exemptions now, to protect assets that he represented were available to creditors in the event of noncompliance, is prejudicial and unfair; (3) Trustee asserts that Debtor's claimed exemptions exceed their statutorily authorized limits; and (4) Trustee also seeks relief in the form of an adjudication that there is property of the estate in this bankruptcy case to administer.[59] The Court will consider each in turn.

### 1.  Whether Debtor is bound by the terms of the Plan which waived any exemptions upon default thereby estopping Debtor from taking different positions post conversion

In his Objection, Trustee asserts that Debtor is bound by his confirmed Plan, which waived exemptions in the event of a default and that the Plan was carefully negotiated, consensual, and

---

[58] FED. R. BANKR. P. 4003.

[59] ECF No. 392 at 4, ⁋ 18.

the Debtor received tremendous benefit under the Plan.[60] As a preliminary matter, this Court must first determine whether Debtor's Plan is binding on the Debtor as argued by the Trustee.[61] There is a split of authority amongst courts that have considered the effect of post confirmation conversion and whether conversion or dismissal negates the Chapter 11 confirmation order and plan.[62]

In a traditional corporate Chapter 11 case, confirmation of a Chapter 11 plan binds the reorganized debtor and its creditors to the terms of the plan; revests property of the estate in the reorganized debtor and discharges pre-confirmation claims.[63] Conversions after plan confirmation often result in a no-asset Chapter 7 estate, because plans would vest all estate property in the reorganized debtor.[64] Nevertheless, in these Chapter 11 cases, the plan would survive dismissal or conversion and a creditor's remedy to enforce their plan-created contractual rights is to sue a debtor in state court.[65] Before 2005, it was clear that the same result occurred when a Chapter 11 debtor was an individual: that is, confirmation of a consensual Chapter 11 plan also discharged any debts that arose before the date of confirmation and the plan would survive dismissal or conversion.[66] In

---

[60] ECF No. 392 at 4, ⁋ 18.

[61] ECF No. 392 at 4, ⁋ 18.

[62] *Compare In re Akamai Physics, Inc.*, 2022 Bankr. LEXIS 1089 *14 (Bankr. D.N.M. 2022) (finding that "with disposable income plan cases, dismissal or conversion negates the confirmation order and the plan, restoring the parties to the *status quo ante*."); *Aarons v. Patch of Land Lending, LLC* (*In re Aarons*), 2023 Bankr. LEXIS 1517 *16-17 (9th Cir. BAP 2023) (finding that a Debtor was bound by the terms of her confirmed plan and conversion had no effect on a settlement within in the plan.).

[63] 11 U.S.C. § 1141(b), (d) (confirmation vests estate property in the reorganized debtor and pre-confirmation debts are discharged, these events result in stay termination.); 11 U.S.C. § 362(c)(1) and 2(a).

[64] *In re Akamai Physics, Inc.*, 2022 Bankr. LEXIS 1089 *14 (Bankr. D.N.M. 2022); *see also In re T.S.P. Industries, Inc.*, 117 B.R. 375, 378 (Bankr. N.D. Ill. 1990) ("Once property has vested in the Debtor, conversion will not revest that property in the estate."); *In re K&M Printing, Inc.*, 210 B.R. 583, 585 (Bankr. D. Ariz. 1997) ("[T]here are no Code provisions that revest estate property upon post-confirmation conversion of a Chapter 11 case."); *In re Freeman*, 527 B.R. 780, 784-87 (Bankr. N.D. Ga. 2015) (unless the plan or confirmation order provides otherwise, "property of the estate on the date of confirmation vests in the debtor at confirmation and does not revest in the post-conversion estate"); *In re Sundale*, 471 B.R. 300, 306 (Bankr. S.D. Fla. 2012) (same); *In re L&T Machining, Inc.*, 2013 Bankr. LEXIS 2693, 2013 WL 3368984, at *6 (Bankr. D. Kan.) (same); *but see In re Sundale, Ltd.*, 471 B.R. 300, 306 (Bankr. S.D. Flo. 2012) (listing cases which hold that property does revest upon confirmation).

[65] *Id.*

[66] *First Nat'l Bank of Oneida, N.A. v. Brandt*, 597 B.R. 663, 667 (M.D. Fla. 2019); (citing 11 U.S.C. § 1141 (2000); *In re Depew*, 115 B.R. 965, 966, 973 (Bankr. N.D. Ind. 1989)).

2005, however, Congress amended section 1141(d) as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("*BAPCPA*") to provide that for an individual Chapter 11 debtor, "confirmation of the plan does not discharge any debt provided for in the plan until the court grants a discharge on completion of all payments under the plan."[67]

Since 2005, individual Chapter 11 cases differ from corporate Chapter 11 cases in the following ways, to wit: (1) property of the estate for a corporate debtor is determined by § 541 but § 1115 adopts the Chapter 13 approach for an individual debtor;[68] (2) section 1129(a)(14) requires an individual debtor to pay any due domestic support obligations for their plan to qualify for confirmation;[69] (3) section 1123(a)(8) requires an individual debtor to commit earnings from personal services to the payment of creditors under the plan;[70] (4) section 1129(a)(15) subjects the plan to the disposable income test of section 1325(b) when an unsecured claim holder objects to the debtor's proposed plan;[71] (5) section 1127 allows an individual debtor to modify their plan at any time between confirmation and completion of payments similar to section 1329;[72] (6) section 1141(d)(2) specifies that the Chapter 11 discharge of an individual debtor is fully subject to the exclusions of discharge in section 523;[73] and (7) section 1141(d)(5) postpones the discharge of a debtor until they have completed all payments under the plan unless the court orders otherwise for cause.[74] The only difference between a consensual and non-consensual individual Chapter 11 plan

---

[67] 11 U.S.C. § 1141(d)(5)(A); *see also* Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("*BAPCPA*"), Pub. L. No. 109-8, § 321(d), 119 Stat. 23, 95-96 (adding 11 U.S.C. § 1141(d)(5)).
[68] 11 U.S.C. § 1115.
[69] 11 U.S.C. § 1129(a)(14).
[70] 11 U.S.C. § 1123(a)(8).
[71] 11 U.S.C. § 1129(a)(15).
[72] 11 U.S.C. § 1127.
[73] 11 U.S.C. § 1141(d)(2).
[74] 11 U.S.C. § 1141(d)(5).

is, absent an objection from an unsecured claim holder, the requirement that an individual debtor's plan satisfies the disposable income test under section 1129(a)(15) is waived.[75]

The Eleventh Circuit, in *First Nat'l Bank of Oneida, N.A. v. Brandt*, found that the BAPCPA changes made individual Chapter 11 cases more akin to Chapter 13 cases because Chapter 13 cases likewise condition discharge on the debtor's fulfillment of their obligation under a confirmed plan.[76] The Eleventh Circuit further suggested that in the context of dismissal, opinions discussing the dismissal of Chapter 13 cases without a discharge could become relevant to a determination of whether and how the dismissal of a debtor's Chapter 11 case without a discharge affects the enforceability of his confirmed Chapter 11 plan.[77] On remand, the district court held that because confirmation of a Chapter 11 plan no longer confers a discharge upon an individual debtor, caselaw interpreting Chapter 12 and Chapter 13 supported a finding that the Chapter 11 plan was negated under section 349(b).[78]

Three cases have addressed the effect of post-confirmation conversion on an individual Debtor's Chapter 11 plan. First, in *Aarons v. Patch of Land Lending, LLC*, a bankruptcy appellate panel concluded that a settlement incorporated into a Chapter 11 plan for an individual was still binding notwithstanding post-confirmation conversion to Chapter 7.[79] Notably, however, the court's cited precedent focused solely on corporate debtors, and did not address the impact of the 2005 amendment applicable to individual debtors, which is presently before this Court.[80]

---

[75] 11 U.S.C. § 1129(a)(15).

[76] *First Nat'l Bank of Oneida, N.A. v. Brandt*, 887 F.3d 1255, 1260-61 (11th Cir. 2018); (citing 11 U.S.C. § 1328(a)).

[77] *First Nat'l Bank of Oneida, N.A. v. Brandt*, 887 F.3d 1255, 1260-61 (11th Cir. 2018); (citing *Nash v. Kester* (*In re Nash*), 765 F.2d 1410, 1413 (9th Cir. 1985); *In re Templeton*, 538 B.R. 578, 587 (Bankr. N.D. Ala. 2015); *In re Irons*, 173 B.R. 910, 910-11 (Bankr. E.D. Ark. 1994); *In re Groves*, 27 B.R. 866, 867-68 (Bankr. D. Kan. 1983).

[78] *First Nat'l Bank of Oneida, N.A. v. Brandt*, 597 B.R. 663, 669 (M.D. Fla. 2018).

[79] 2023 Bankr. LEXIS 1517, at *10-11 (9th Cir. BAP 2023).

[80] *Id.*

Second, in *In re Akamai Physics, Inc.*, a bankruptcy court indicated that individual Chapter 11 plans are "disposable income plans" akin to Chapter 12 and Chapter 13 plans, and therefore dismissal or conversion negates the confirmation order and the plan, restoring parties to the *status quo ante*.[81] Nevertheless, each case citied in support of the proposition examined the issue in the Chapter 13 context.[82] The court went on to examine two policy reasons explaining the difference between why traditional corporate Chapter 11 plans survive dismissal or conversion, but "disposable income plans" do not, to wit:

> First, substituting the disposable income cramdown for the absolute priority rule and the other chapter 11 creditor safeguards is seen as a major benefit to debtors. It is perceived as unfair to give debtors the benefit of favorable plan terms if they do not make all the plan payments… Courts do not have a similar problem enforcing chapter 11 plans; they are viewed as compromise arrangements that have creditor support.
> Second, when a Disposable Income Plan case is dismissed or converted before the debtor completes the plan payments, there has been no discharge. Thus, unlike chapter 11 plans, nothing prevents creditors from enforcing their prepetition claims against debtors. If courts enforced confirmed Disposable Income Plans after dismissal or conversion, creditors would have both their prepetition rights and their rights under the confirmed plans.[83]

Nevertheless, there is an additional distinction present in this case not directly addressed in *In re Akamai Physics, Inc.*, which is when an individual Chapter 11 plan is consensual, thus rendering section 1129(a)(15) as inapplicable.[84] Section 1129(a)(15) subjects an individual Chapter 11 plan to the disposable incomes test of section 1325(b); however, it is only applied when the holder of an allowed unsecured claim objects to confirmation of the plan.[85]

---

[81] 2022 Bankr. LEXIS 1089, at *14-15 (Bankr. D. N.M. 2022).
[82] *Id.* (citing *Harris v. Viegelahn*, 575 U.S. 510, 520, 135 S. Ct. 1829, 191 L. Ed. 2d 783 (2015) (finding that a chapter 13 plan is no longer binding after conversion to chapter 7); *In re Yao*, 548 B.R. 818, 822 (Bankr. D.N.M. 2016) (same); *In re Petit*, 291 B.R. 582, 2019 WL 1975844, at *5 (Bankr. D.N.M.) (same); *In re Nash*, 765 F.2d 1410, 1413 (9th Cir. 1985) (chapter 13 plan negated by dismissal before plan completion); *In re Oparaji*, 698 F.3d 231, 238 (5th Cir. 2012) (same); *In re Bullock*, 986 F.3d 733, 739 (7th Cir. 2021) (quoting *Oparaji* with approval); *In re Mayo*, 2021 Bankr. LEXIS 2700, 2021 WL 4483419, at *3 (Bankr. M.D. Ala.) (following *Oparaji* and *Nash*).
[83] *In re Akamai Physics, Inc.*, 2022 Bankr. LEXIS 1089, at *15-16 (Bankr. D.N.M. 2022).
[84] 11 U.S.C. § 1129(a)(15).
[85] *Id.*

Third, in *In re Baroni*, a bankruptcy court indicated that despite a delayed discharge in an individual Chapter 11 case, upon confirmation a Chapter 11 plan remains binding on all parties, including a debtor.[86] Specifically, the court concluded that a debtor's Chapter 11 plan as to the characterization of property was *res judicata* and barred arguments attempting to recharacterize the community property.[87] Nevertheless, the court relied on precedent involving corporate debtors to surmise the effect of the Chapter 11 plan.[88]

Therefore, finding insufficient authority addressing the survival or negation of a consensual individual Chapter 11 plan upon conversion, the Court will next determine whether a consensual, individual Chapter 11 Plan survives conversion to Chapter 7.

### a. Whether a consensual individual Chapter 11 Plan survives conversion to Chapter 7

The effect of post-confirmation conversion, is governed under section 348.[89] Section 348 provides that conversion from Chapter 11 to Chapter 7 does not commence a new bankruptcy case but instead constitutes an order for relief under Chapter 7.[90] Conversion terminates the service of any trustee or examiner that is serving before conversion.[91] Prior to 2005 and consistently since

---

[86] 654 B.R. 334, 351, 360 (Bankr. C.D. Cal. 2023).

[87] *Id.* at 361.

[88] *Id.*; (citing *Trulis v. Barton*, 107 F.3d 685, 691 (9th Cir. 1995) ("Once a bankruptcy plan is confirmed, it is binding on all parties and all questions that could have been raised pertaining to the plan are entitled to res judicata effect"); *In re Pardee*, 193 F.3d 1083, 1086 (9th Cir. 1999) ("If a creditor fails to protect its interests by timely objecting to a plan or appealing the confirmation order, it cannot later complain about a certain provision contained in a confirmed plan, even if such a provision is inconsistent with the Code . . . This court has recognized the finality of confirmation orders even if the confirmed bankruptcy plan contains illegal provisions.").

[89] 11 U.S.C. § 348.

[90] 11 U.S.C. § 348(a).

[91] 11 U.S.C. § 348(e); *see also* ECF No. 380.

for corporate debtors, courts have held that conversion does not vitiate the binding nature of a Chapter 11 plan[92] because section 348 omits any reference to sections 1129 and 1141.[93]

Chapter 13 plans, however, are negated upon conversion.[94] In *Harris v. Viegelahn*, the Supreme Court found that when a debtor exercises their statutory right to convert, the case is placed under Chapter 7's governance, and no Chapter 13 provision holds sway.[95] This holding cited section 103[96] for the proposition that Chapter 13 provisions apply only to cases under Chapter 13.[97] An argument may be advanced for applying *Viegelahn's* logic in the context of a case converted from Chapter 11 to Chapter 7, because section 103(g) is nearly identical to section 103(j).[98] Nevertheless, a bankruptcy court rejected this argument for a corporate debtor in *In re Oakhurst Lodge, Inc.*, finding that section 1144 is the exclusive avenue for revoking confirmation of a Chapter 11 plan.[99] The court noted that unlike Chapter 13 plans, Chapter 11 plans are frequently implemented by complex transactions that would be difficult, if not impossible, to disentangle after confirmation, whereas unwinding the effects of a confirmed but failed Chapter 13 plan ordinarily is as simple as requiring the Chapter 13 trustee to refund undistributed plan payments.[100]

---

[92] *In re Oakhurst Lodge, Inc.*, 582 B.R. 784, 792 (Bankr. E.D. Cal. 2018); *see also Still v. Rossville Bank* (*In re Chattanooga Wholesale Antiques, Inc.*), 930 F.2d 458 (6th Cir. 1991) (trustee not allowed to avoid debtor's payments to creditors under the terms of a confirmed chapter 11 plan made before conversion to chapter 7); *Bank of La. v. Pavlovich* (*Matter of Pavlovich*), 952 F.2d 114 (5th Cir. 1992) (creditor could not object to discharge or dischargeability of preconfirmation debts after Chapter 11 plan had discharged debts); *Laing v. A.G. Johnson* (*In re Laing*), 31 F.3d 1050 (10th Cir. 1994) (stipulation that a particular debt was non-dischargeable as a part of a Chapter 11 proceeding bound debtor after case was converted to Chapter 7); *In re Troutman Enters., Inc.*, 253 B.R. 8, 13 (6th Cir. BAP 2000); *In re BNW, Inc.*, 201 B.R. 838, 850 (S.D. Ala. 1996).

[93] *See* 11 U.S.C. § 348; *see also* 11 U.S.C. § 1129 (confirmation of plan); 11 U.S.C. § 1141 (effect of confirmation).

[94] *See Harris v. Viegelahn*, 135 S. Ct. 1829, 1838 (2015).

[95] *Id.*

[96] 11 U.S.C. § 103 was amended in 2019 with the adoption of the Small Business Reorganization Act of 2019; the amendment redesignated (i) through (k) as (j) through (l), respectively; and added (i).

[97] 11 U.S.C. § 103(j).

[98] *In re Oakhurst Lodge, Inc.*, 582 B.R. 784, 793 (Bankr. E.D. Cal. 2018).

[99] *Id.*

[100] *Id.* ("Such transactions may include transfers of property of the estate; mergers or consolidation of the debtor with other entities; cancellation of indentures; changes to the interest rate or other terms of outstanding securities;

While true that individual Chapter 11 plans now more closely resemble Chapter 13 plans, a Chapter 11 plan is the byproduct of compromise and negotiation, whereas Chapter 13 plans are form plans.[101] Absent an objection, creditor approval is presumed in Chapter 13 plans, whereas Chapter 11 plans require balloting, and section 1129(a)(10) requires that at least one class of claims accept the plan.[102] Furthermore, this Court finds the difference between the conversion and dismissal statutes to be instructive.[103] Section 348 merely instructs that an existing case continues along another track.[104] Congress' stated intent with section 349 however, is to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case.[105] This Court agrees that a consensual individual Chapter 11 plan is binding, with section 1144 being the exclusive avenue for revoking confirmation of a Chapter 11 plan.[106] Accordingly, this Court holds that that individual Chapter 11 plans confirmed under section 1129(a) survive conversion.[107] The Court will next consider whether Debtor's Chapter 11 plan waived any exemptions upon default, thereby estopping Debtor from taking opposing positions.

---

amendment of the debtor's charter; issuance of securities for cash, for property or existing securities."); *see also* 11 U.S.C. § 1123(a)(5)(B), (C), (F), (H)-(J).

[101] The Southern District of Texas mandates the use of a form Chapter 13 Plan drafted by and adopted by all the Judges of the Southern District of Texas. *See In re Martin*, 2022 Bankr. LEXIS 3223, *2 (Bankr. S.D. Tex. 2022).

[102] *De Boer v. Talsma* (*In re Talsma*) 496 B.R. 828, 836 n.10 (Bankr. N.D. Tex. 2013); Fed. R. Bankr. P. 3018(c).

[103] 11 U.S.C. § 348; 11 U.S.C. § 349.

[104] *Harris v. Viegelahn*, 575 U.S. 510, 515 (2015).

[105] *Wells Fargo Bank, N.A. v. Titus Chinedu Oparaji* (*In re Titus Chinedu Oparaji*), 698 F.3d 231, 238 (5th Cir. 2012).

[106] 11 U.S.C. § 1144; *see e.g. SC SJ Holdings, LLC v. Pillsbury Winthrop Shaw Pittman LLP* (*In re SC SJ Holdings, LLC*), 2023 U.S. Dist. LEXIS 48320, *23 (D. Del. 2023) (§ 1144 is the "only means by which a confirmation order may be . . . revoked."); *Acquisition Co. of Am. V, LLC v. Leonard* (*In re Asset Resolution, LLC*), Fed. Appx. 578, 579 (9th Cir. 2013) (same); *In re Logan Place Props., Ltd.*, 327 B.R. 811, 815 (Bankr. S.D. Tex. 2005) (The language "if and only if was added to § 1144 in 1984 to emphasize fraud as the exclusive means for revocation."); *In re Renaissance Radio, Inc.*, 2019 Bankr. LEXIS 1047, *19-20 (Bankr. N.D. Tex. 2019) (Congress was familiar with the chain of events that take place after a chapter 11 plan is confirmed and so provided that "only fraud would warrant an attempt to 'unscramble the egg,' and even then only within the 180-day time frame imposed by § 1144."); *In re Clev. Imaging & Surgical Hosp., L.L.C.*, 2022 Bankr. LEXIS 599, *9 (Bankr. S.D. Tex. 2022) (Under Rule 9024, Rule 60 may only be used to "revoke an order confirming a plan . . . within the time allowed by § 1144.").

[107] The issue of whether a nonconsensual Chapter 11 plan survives conversion is not before the Court.

### b. Whether Debtor's Plan waived exemptions upon default

Trustee first asserts that Debtor's Plan waived exemptions upon default.[108] Specifically, Trustee notes that 2095 days passed from the time the Debtor claimed federal exemptions until the time the Debtor filed his conversion schedules, now claiming Texas state law exemptions and seeking to retain property that was pledged under the Plan.[109] In support, Trustee points to Section 7.1 of the Plan which states:

> _Revesting of Property of the Estate. Except as otherwise provided in the Plan, on the Effective Date, the Property of the Estate of the Debtor, except the Harness Creek Property shall revest in the Reorganized Debtor. The Harness Creek Property shall remain property of the Bankruptcy Estate, shall remain subject to the automatic stay under section 362(a), and shall not revest in the Reorganized Debtor until the Allowed Claims of JPMC, TCB and Green Bank are paid in full. Upon payment in full of the Allowed Claims of JPMC, TCB and Green Bank, the Harness Creek Property shall revest in the Reorganized Debtor subject to the full homestead exemptions provided under Chapter 41 of the Texas Property Code and Section 28 of the Texas Constitution. Subject to the terms and conditions of the Plan, the Reorganized Debtor may operate his business and use, acquire, and disburse Property, including the Harness Creek Property, without supervision by the Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules. As of the Effective Date, all Property of the Reorganized Debtor shall be free and clear of all Claims, Liens, encumbrances and other interests of Creditors, except as otherwise provided in the Plan._[110]

Additionally, the Plan contains language indicating that Debtor's other assets would be available to satisfy deficiency claims of creditors in the event of non-compliance with the Plan, to wit:

> _The payment of the Allowed Claims of TCB and Green Bank are intended to be and will be secured by the Harness Creek Property. It is intended that the Harness Creek Property provide full value to TCB and Green Bank to secure their Allowed Claim. Accordingly, so long as there is compliance with the provisions of this paragraph, neither Mr. Saberioon nor his assets (including any assets that are directly or indirectly fully owned by Mr. Saberioon and Mrs. Saberioon) nor the_

---

[108] ECF No. 392 at 4-5.
[109] ECF No. 392 at 4, ⁋ 22.
[110] ECF No. 159 at 11-12, ⁋ 7.1.

*assets of his children will be liable for any deficiency in full payment that arises out of a sale of the Harness Creek Property.*[111]

Finally, the Plan contains certain default provisions, to wit:

*Material Default Provisions. A failure to timely make a payment to a holder of an Allowed Claim pursuant to the terms of the Plan shall be an "Event of Default." Following an Event of Default, each holder of an Allowed Claim shall have the right to enforce their rights under the Plan by sending a written "Notice of Default" to the Reorganized Debtor.*[112]

Trustee asserts that because Debtor's Plan indicates that absent a default the Debtor's assets and his family's would be liable for any deficiency in full payment arising out of the Harness Creek Property, Debtor effectively waived his exemptions in the event of a default of his obligations under the plan.[113] However, Trustee's cited paragraph expressly reads as a release of liability.[114] The Plan provides that should the Debtor fully comply with the provisions indicated, Debtor, his family, and his assets would not be liable for any deficiency that arises from sale of the Harness property.[115] No express provision of the Plan states that the Debtor was relinquishing the ability to claim exemptions.[116] Furthermore, even if there was an express waiver of exemptions, the Fifth Circuit teaches that waivers regarding exemptions are unenforceable.[117]

Accordingly, the Court overrules Trustee's Objection that Debtor's Plan waived exemptions in the event of a default. The Court will next consider whether creditors relied on Debtor's representations in the Plan.

### 2. Whether creditors relied on Debtor's representations in the Plan

---

[111] ECF No. 159 at 7, Class 5.
[112] ECF No 159 at 16, ¶ 7.3.
[113] ECF No. 392 at 4-5.
[114] "Accordingly, so long as there is compliance with the provisions of this paragraph, neither Mr. Saberioon nor his assets (including any assets that are directly or indirectly fully owned by Mr. Saberioon and Mrs. Saberioon) nor the assets of his children will be liable for any deficiency in full payment that arises out of a sale of the Harness Creek Property"; ECF No. 159 at 7, Class 5.
[115] ECF No. 159 at 7, Class 5.
[116] *See generally* ECF No. 159.
[117] *Davis v. Davis* (*In re Davis*), 170 F.3d 475, 478 (5th Cir. 1999) (citing 11 U.S.C. § 522(e)).

Trustee next asserts that because Debtor's Plan indicated that the Debtor was utilizing federal exemptions, Debtor should be prohibited from now utilizing Texas state law exemptions since creditors relied on Debtor's representations in formulating the Plan.[118] Specifically, Trustee asserts that Debtor's claimed exemptions should be stricken because he is not entitled to change them after parties have relied upon his election under a different exemption scheme for 2095 days.[119]

A debtor has the general right to amend any schedule as a matter of course at any time before the case is closed.[120] In general, courts allow liberal amendment of exemptions claims unless there is a showing of bad faith, concealment of property, or prejudice.[121] Exemptions claimed in converted cases are governed by sections 522(b) and 348(a) of the Bankruptcy Code.[122] Section 522(b)(2)(A) provides that an individual debtor may exempt from his bankruptcy estate "any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition."[123] Section 348(a) states that when a case is converted from one chapter to another, the conversion does not advance the filing date of the petition to the date of conversion.[124]

Trustee does not assert that the Debtor did not have a right to amend his schedules, but asserts that because creditors relied on Debtor's representations, Debtor should not be allowed to change from Federal to Texas exemptions.[125] Trustee cites three cases in support.[126] First, Trustee cites *In re Eldridge*, a Chapter 7 case where the Court prohibited the debtors to switch from federal

---

[118] ECF No. 392 at 5-6.
[119] ECF No. 392 at 6.
[120] *See* FED. R. BANKR. P. 1009(a); *see also Lowe v. Sandoval*, 103 F.3d 20, 22 (5th Cir. 1997).
[121] *Stinson v. Williamson* (*In re Williamson*), 804 F.2d 1355, 1358 (5th Cir. 1986).
[122] *Lowe v. Sandoval*, 103 F.3d 20, 22 (5th Cir. 1997).
[123] 11 U.S.C. § 522(b)(2)(A).
[124] 11 U.S.C. § 348(a).
[125] ECF No. 392 at 5; January 10, 2024 – Courtroom Hearing (Closing Argument).
[126] ECF No. 392 at 6.

to state exemptions.[127] Nevertheless, the Fifth Circuit noted that this case relied on the former Bankruptcy Rule 403(e), which was replaced by Bankruptcy Rule 4003. Absent bad faith, concealment of property, or prejudice to creditors, the general rule is to allow liberal amendment of exemption claims.[128]

Second, Trustee cites *In re Schellenberg*, a former Chapter 13 case converted to Chapter 7.[129] In *Schellenberg*, the court found that the Chapter 7 trustee suffered prejudice due to detrimental reliance when debtors, who switched from Texas-state exemptions to federal exemptions, were able to "exempt more property than was originally claimed and was originally exempt."[130] Unlike in *Schellenberg* here, Debtor originally filed his schedules claiming Texas-state exemptions.[131] Debtor only switched to Federal exemptions to permit the administration of Debtor's otherwise exempt Texas homestead property, the Harness Creek Property.[132] The Harness Creek Property was fully administered under the plan, and Debtor's post conversion exemptions only adds a single vehicle that had previously been designated as exempt in his initial schedules.[133] Debtor is not exempting more than originally claimed.[134]

Third, Trustee cites *In re Galindo*, a former Chapter 13 case converted to Chapter 7, where Trustee failed to establish that he took affirmative actions based on his reliance in Debtors' claimed exemptions.[135] This Court finds the standard used in *In re Galindo* is applicable here.

Detrimental reliance is shown when a trustee "engaged in efforts to sell certain property, which efforts he or she might have foregone had the debtor initially claimed such property as

---

[127] 15 B.R. 594. 595 (Bankr. S.D.N.Y. 1981).
[128] *In re Williamson*, 804 F.2d 1355, 1358 (5th Cir. 1986).
[129] *In re Schellenberg*, 2010 WL 1856351 (Bankr. W.D. Tex. 2010) (unreported).
[130] *Id.* at *3.
[131] ECF No. 423-3.
[132] ECF No. 403 at 2.
[133] ECF No. 423-3.
[134] *See In re Galindo*, No. 15-52577-CAG, 2018 WL 601654, *7 (Bankr. W.D. Tex. Nov. 14, 2018).
[135] *Id.*

exempt."[136] Prejudice has also been found in situations where "expenses have been incurred by the estate in order to recover or monetize an asset for the benefit of creditors, only to have the debtor then amend his exemptions to include the asset."[137] Courts have also determined that amended schedules should be disallowed as prejudicial if "a distribution of assets has already been made on the basis of exemptions previously claimed."[138] Pursuant to Bankruptcy Rule 4003(c), Trustee has the burden to prove that debtor's exemptions are not properly claimed by a preponderance of the evidence.[139]

Trustee has failed to satisfy his burden here. Neither Trustee's objection nor the evidence provided establish that Trustee took affirmative actions based on his reliance in Debtor's claimed exemptions. Indeed, Trustee instead asserts that creditors generally have been misled, and that Debtor "built a better mousetrap and did not say anything."[140] Nevertheless, the Supreme Court is clear that section 522 "does not give courts discretion to grant or withhold exemptions based on whatever considerations they deem appropriate."[141] The mere fact that 2095 days passed between Debtor claiming federal exemptions in his amended schedules and Texas-state exemptions in his post-conversion schedules is insufficient evidence to demonstrate reliance here.[142]

Accordingly, Trustee's objection that Debtor's claim exemptions should be stricken because he is not entitled to change them after parties have relied upon his election under a different exemption scheme is overruled. The Court will next consider whether Debtor's claimed exemptions exceed their statutory limits.

---

[136] *Id.*; (quoting *In re Cudeyro*, 213 B.R. 910, 919 (Bankr. E.D. Pa. 1997) (citations omitted)).
[137] *In re Bowen*, No. 03-43409-rfn-7, 2005 Bankr. LEXIS 824 at *11 (Bankr. N.D. Tex. Feb. 7, 2005).
[138] *Id.*; *see also In re Talmo*, 185 B.R. 637 (Bank. S.D. Fla. 1995) (finding amendment was prejudicial where debtor waited to exempt property until after trustee procured order authorizing sale of that property).
[139] *See In re Galindo*, No. 15-52577-CAG, 2018 WL 601654, *5-6 (Bankr. W.D. Tex. Nov. 14, 2018).
[140] January 10, 2024 – Courtroom Hearing (Closing Argument).
[141] *Law v. Siegel*, 571 U.S. 415, 423-424 (2014).
[142] ECF No. 392 at 4.

### 3.   Whether Debtor's claimed exemptions exceed their statutory limits

Trustee asserts that Debtor's claimed exempt property exceeds the statutory limits.[143] Debtor lists 12 items as exempt under schedule C, citing *inter alia*, the Texas Property Code in support of the claimed exemption.[144] Trustee does not specify as to which claimed property exceeds the statutory limits.[145] Nevertheless, the total personal property claimed as exempt under schedule C is $93,975 which is under the $100,000 limit proscribed by Tex. Prop. Code § 42.001(a)(1).[146] Trustee provides no evidence to the contrary and as such, Trustee's objection that Debtor's claimed exemptions exceed their statutory limits is overruled. The Court will next consider whether Trustee may seek relief in the form of an adjudication that there is property of the estate in this bankruptcy case to administer.

### 4.   Whether Trustee may seek relief in the form of an adjudication that there is property of the estate in this bankruptcy case to administer

Trustee requests that the Court make a finding that there is bankruptcy estate property to administer in this Chapter 7 case.[147] Debtor asserts that because his Plan did not contain a re-vesting provision in the event of a subsequent conversion to Chapter 7, there was no revesting of property into the bankruptcy estate and therefore no property of the bankruptcy estate.[148]

As a preliminary matter, Debtor asserts that Trustee's requested relief should be asserted in the context of an adversary proceeding pursuant to Rule 7001(9).[149] However, not all requests for a determination of a legal issue in a bankruptcy case require an adversary proceeding.[150] Rule

---

[143] ECF No. 392 at 6.
[144] ECF No. 423-3.
[145] *See generally* ECF No. 392 at 5-6.
[146] *See generally* Tex. Prop. Code § 42.001(a)(1); ECF No. 423-6 at 3-4.
[147] ECF No. 392 at 6-7.
[148] ECF No. 403 at 3-4.
[149] ECF No. 403 at 3.
[150] *In re Three Strokes Ltd. P'ship*, 397 B.R. 804, 807 (Bankr. N.D. Tex. 2008).

7001(9) only speaks to requests for declaratory judgment relating to items (1)-(8) of Rule 7001.[151] The request for a determination of what occurred to Debtor's estate post-conversion under Debtor's Plan is not governed by Rule 7001.[152] As such, the Court will determine whether upon conversion there is a bankruptcy estate to administer or whether there is no property for the Chapter 7 trustee to administer because all assets vested in the Debtor upon confirmation.[153]

Debtor asserts that pursuant to section 1141(b) of the Bankruptcy Code, because confirmation of a plan vests all of the property of the estate in the debtor, the estate dissolves upon confirmation absent the plan or confirmation order carving out such exceptions.[154] In support, Debtor cites *In re Pete Gallegos Paving, Inc.*, a corporate Chapter 11 case where the court found that both conversion and dismissal were not in the best interests of creditors post-confirmation.[155] The court reasoned that after substantial consummation, attempting to restore the status quo ante or to mutate the bankruptcy estate from a Chapter 11 reorganization to a Chapter 7 liquidation would be impossible, because confirmation binds all parties to the confirmed plan, revests property of the estate in the debtor, frees that property of all nonplan claims and interests, discharges the debtor of preconfirmation debt, and lifts the automatic stay.[156] The court went on to hold that absent a specific provision in a plan to the contrary, after a plan has been confirmed, conversion to Chapter 7 does not create assets for the Chapter 7 estate.[157] However, as discussed *supra*, the individual Chapter 11 debtor differs from a corporate Chapter 11 debtor, in that there is no

---

[151] *Id.*

[152] *See generally id.*

[153] ECF No. 392 at 6-7; ECF No. 403 at 3-4.

[154] ECF No. 403 at 3-4; 11 U.S.C. § 1141(b).

[155] 2008 Bankr. LEXIS 1496 (Bankr. S.D. Tex. 2008).

[156] *Id.* at *5.

[157] *Id.* (citing *In re K & M Printing, Inc.*, 210 B.R. 583, 584 (Bankr. D. Ariz. 1997)); *but also see In re Smith*, 201 B.R. 267 (D. Nev. 1996).

discharge at confirmation, and the automatic stay remained in effect throughout the pendency of this Plan.[158] It is not impossible to "unscramble the eggs" in individual cases.[159]

Trustee puts forth two arguments that there is a Chapter 7 estate here, to wit: (1) the provisions of the plan regarding how the assets would be distributed indicate that they would remain assets of the estate upon conversion; and (2) finding that confirmation vested all of the property of the estate in the debtor would render Bankruptcy Code sections 1112(b) and 348 meaningless.[160] The Court will address both in turn.

### a. Debtor's Chapter 11 Plan Regarding Asset Distribution

Both Trustee and the Debtor agree that there is no revesting provision in the Debtor's Chapter 11 plan upon conversion.[161] Trustee suggests however, that provisions of the Plan regarding the assets to be distributed under the Plan which incorporate a settlement, allows the Court to infer that Debtor's assets would remain in the bankruptcy estate upon conversion.[162] Specifically, Trustee cites paragraph 7.1 of the Confirmation Order, which states:

> **Revesting of Property of the Estate**. Except as otherwise provided in the Plan, on the Effective Date, the Property of the Estate of the Debtor, except the Harness Creek Property shall revest in the Reorganized Debtor. The Harness Creek Property shall remain property of the Bankruptcy Estate, shall remain subject to the automatic stay under section 362(a), and shall not revest in the Reorganized Debtor until the Allowed Claims of JPMC, TCB, Green Bank and Class 6 are paid in full. Upon payment in full of the Allowed Claims of JPMC, TCB, Green Bank and Class 6, the Harness Creek Property shall revest in the Reorganized Debtor subject to the full homestead exemptions provided under Chapter 41 of the Texas Property Code and Section 28 of the Texas Constitution. Subject to the terms and conditions of the Plan, the Reorganized Debtor may operate his business and use, acquire, and disburse Property, including the Harness Creek Property, without supervision by the Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules. As of the Effective Date, all Property of the Reorganized Debtor shall be

---

[158] 11 U.S.C. § 1141(d)(5); ECF No. 423-1.
[159] *In re Pete Gallegos Paving, Inc.*, 2008 Bankr. LEXIS 1496 at *5-6 (Bankr. S.D. Tex., April 14, 2008).
[160] ECF No. 392 at 6-7; January 10, 2024 – Courtroom Hearing (Closing Argument).
[161] January 10, 2024 – Courtroom Hearing (Closing Argument).
[162] ECF No. 392 at 6-7.

free and clear of all Claims, Liens, encumbrances and other interests of Creditors, except as otherwise provided in the Plan.[163]

Paragraph 7.1 of the Plan is clear that with exception to the Harness Creek Property, all property of the estate vested in the Debtor.[164] While Paragraph 7.1 of the Plan indicates that Debtor could utilize property, including the Harness Creek Property, the Plan's language is silent as to what occurs in the case of conversion.[165] As such, finding no authority directly in the Plan, the Court will next consider whether Bankruptcy Code Sections 1112(b) and 348(a) would be rendered meaningless if there was no Chapter 7 estate remaining here.

### b. Whether Bankruptcy Code Sections 1112(b) and 348(a) would be rendered meaningless if no Chapter 7 Estate remained

Trustee next asserts that if there is no bankruptcy estate to administer in this Chapter 7 case based upon the "revesting" provisions in the Plan, it would render Bankruptcy Code sections 1112(b) and 348 meaningless.[166] Specifically, Trustee indicates that there would be no purpose to convert a post confirmation Chapter 11 plan if there was no estate for a Chapter 7 trustee to administer.[167]

The Ninth Circuit recently addressed this issue in an individual Chapter 11 case that was converted to a Chapter 7 case post-confirmation, in *Baroni v. Seror*.[168] In that case, the 9th Circuit noted that courts have varied in their approach to what happens with the bankruptcy estate upon conversion from Chapter 11 to Chapter 7.[169] The court noted that the vesting provisions in section 1141 are explicitly subject to the provisions of the plan, and that the plan does not need to explicitly

---

[163] ECF No. 180 at 15.
[164] *Id.*
[165] *Id.*
[166] *See e.g. In re John Morris Hughes*, 279 B.R. 826 (Bankr. S.D. Illinois 2002).
[167] January 10, 2024 – Courtroom Hearing (Closing Argument).
[168] *Baroni v. Seror* (*In re Baroni*), 36 F.4th 958 (9th Cir. 2022).
[169] *Id.* at 971.

state that assets revest in a converted Chapter 7 estate for this to happen.[170] The court held that although the plan's language stated that all property of the estate was to be vested in the debtor, the language and purpose of the plan demonstrated that the assets did not vest in the debtor upon confirmation because that plan provided ongoing stay benefits.[171] Therefore, the assets revested in the estate upon conversion.[172]

This Court agrees with the Trustee and holds that the Debtor's assets revested in the Chapter 7 estate upon conversion. The Bankruptcy Code is silent as to what constitutes the bankruptcy estate when a Chapter 11 case is converted to Chapter 7 after plan confirmation.[173] Nevertheless, the Plan in this case was proposed for the purpose of providing relief to the Debtor, Creditors and parties-in-Interest pursuant to the Bankruptcy Code, and granted this Court continuing jurisdiction to oversee the implementation of the plan.[174] Similar to the *Baroni* case, the Plan here held the automatic stay in place pending discharge.[175] The release discussed *supra* which envisioned protecting all of Debtor's assets upon sale of the Harness Creek Property, demonstrates that Debtor's assets did not vest in the debtor upon confirmation because that plan provided the release only upon consummation of that paragraph, or put differently, the sale of the Harness Creek Property towards the full value of the secured claim.[176] As such, this release falls squarely within the exception highlighted in section 1141(b).[177]

---

[170] *Id.* (citing *Pioneer Liquidating Copr. v. United States Trustee* (*In re Consol. Pioneer Mortg. Entities*), 264 F.3d 803, 808 (9th Cir. 2001).

[171] *Baroni v. Seror* (*In re Baroni*), 36 F.4th 958, 971-974 (9th Cir. 2022); *see also Hillis Motors, Inc. v. Haw. Auto. Dealers' Ass'n*, 997 F.2d 581, 588-590 (9th Cir. 1993).

[172] *Id.*

[173] *Id.* at 971.

[174] ECF No. 423-1 at 6.

[175] *Baroni v. Seror* (*In re Baroni*), 36 F.4th 958, 971-974 (9th Cir. 2022).

[176] ECF No. 423-1 at 25.

[177] "*Except as otherwise provided in the plan or the order confirming the plan*, the confirmation of a plan vests all of the property of the estate in the debtor." 11 USCS § 1141(b) (emphasis added).

However, even if this exception did not apply, section 348 envisions the continuation of an estate at the time of conversion.[178] Even without a provision specifically providing that remaining assets would revest in the estate in the event of conversion, the plan contains provisions with regard to distributions to creditors and gives this Court broad powers to oversee implementation of the Plan.[179] Specifically, the Plan provides, *inter alia*, for distributions of the proceeds of the Harness Creek Property,[180] payments involving the reorganized Debtor's net disposable income,[181] and retention of jurisdiction to issue orders in aid of execution of the Plan to the extent authorized by § 1142 of the Bankruptcy Code.[182] Accordingly, this Court agrees that such factors are sufficient to find that even if property did vest in the Debtor upon confirmation, the property revested in the Chapter 7 estate upon conversion.[183] To otherwise find that an individual Chapter 11 debtor can negotiate a plan, default, and then prohibit a Chapter 7 Trustee from administering nonexempt assets, would run contrary to section 348 and render section 1112(b)(4)(N) meaningless in the conversion context.[184]

Accordingly, and pursuant to 11 U.S.C. § 348, the Court finds that upon conversion there was a continuation of the instant bankruptcy estate and any assets that vested in the Debtor upon confirmation revested into the Chapter 7 estate upon conversion. Nevertheless, although the Court finds that a Chapter 7 estate exists upon conversion and Debtor's assets revested, for the reasons discussed *supra*, Debtor is entitled to his exemptions.[185]

---

[178] *In re Sundale, Ltd.*, 471 B.R. 300, 306 (Bankr. S.D. Flo. 2012).
[179] ECF No. 423-1 at 25; see also *Pioneer Liquidating Copr. v. United States Trustee* (*In re Consol. Pioneer Mortg. Entities*), 264 F.3d 803, 808 (9th Cir. 2001) (citing *Hillis Motors, Inc. v. Hawaii Auto Dealers' Ass'n*, 997 F.2d 581, 587 (9th Cir. 1993).
[180] ECF No. 423-1 at 12-13.
[181] ECF No. 423-1 at 13.
[182] ECF No. 423-1 at 9-10.
[183] *See Hillis Motors*, 997 F.2d at 589-90 (holding because the debtor remained protected by the automatic stay during administration of the plan, her assets remained in the estate).
[184] *See* 11 U.S.C. § 1112(b)(4)(N) (cause includes material default by the debtor with respect to a confirmed plan).
[185] *See* ECF No. 423-6.

#### IV.    CONCLUSION

An order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED March 15, 2024

Eduardo V. Rodriguez
Chief United States Bankruptcy Judge